IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GINA M. COTE**, | Case No. 3:15-cv-00103-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Merrill Schneider, Schneider Kerr Law Offices, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97201-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Gina Marie Cote ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for disability insurance benefits. For the following reasons, the Commissioner's decision is

REVERSED and this case is REMANDED for further proceedings.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff protectively filed an application for disability insurance benefits on May 18, 2011, alleging disability beginning on August 31, 2009. AR 180-84. She was 38 years old at the alleged disability onset date. *See* AR 180. She alleges disability due to the following medical

conditions: fibromyalgia, chronic fatigue syndrome, depression, anxiety, and hypothyroidism. AR 209. The Disability Determinations Service ("DDS") denied her applications initially on November 9, 2011 and upon reconsideration on June 29, 2012. AR 64-80, 82-102. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 120-21. An administrative hearing was held on June 17, 2013. AR 43. After considering all the evidence in the record, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. AR 22-34. The Appeals Council considered the record but declined to review the decision, making the ALJ's decision the final order of the Commissioner. AR 1-7. Plaintiff now seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of

the Social Security Act through December 31, 2014. AR 24. The ALJ then applied the sequential

process. AR 24-34. At step one, the ALJ determined that Plaintiff has not engaged in substantial

gainful activity since August 31, 2009. AR 24. At step two, the ALJ determined that Plaintiff has

the following medically determinable impairments: pulmonary hypertension with aortic and

mitral valve insufficiency, hypertension, Arnold-Chiari Syndrome, colitis, knee disorder, back

disorder, headaches, personality disorder, anxiety disorder, and affective disorder. *Id.* The ALJ

determined, however, that Plaintiff does not have a severe impairment or combination of

impairments. AR 25. The ALJ made an alternative finding that Plaintiff had the residual

functional capacity ("RFC") to perform a full range of light work. AR 33. The ALJ concluded

that, under this alternative finding, Plaintiff could perform past relevant work as a bookkeeper,

customer service representative, receptionist, and broker. AR 33. Consequently, the ALJ

determined that Plaintiff was not disabled. *Id.*

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (A) rejecting all of the medical opinion evidence and finding all impairments to be non-severe at step two; and (B) failing to follow the sequential evaluation process in his alternative findings.

**A.  Medical Opinion Evidence at Step Two**

Plaintiff argues that the ALJ erred at step two by rejecting all medical opinion evidence and finding that Plaintiff does not have a severe impairment. The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert*, 482 U.S. at 153-54; *see Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (establishing that a step two impairment "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work") (emphasis in original).

At step two, the claimant bears the burden to show the existence of a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii); *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007). In order to meet this burden, the claimant must show "medical evidence consisting of signs, symptoms, and laboratory findings, not only [a claimant's] statement of symptoms[.]" 20 C.F.R. § 404.1508. An impairment is "not severe" if the medical evidence shows that the impairment "does not significantly limit [a claimant's] physical ability to do basic work activities," which includes the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a)-(b). After an ALJ finds any of a claimant's impairments to be severe, the ALJ must continue with the sequential analysis and consider the effects of all of the claimant's impairments, severe and non-severe. SSR 96-9p, *available at* 1996 WL 374184, at *5.

When determining whether the medical evidence supports a finding of severity at step two, an ALJ is responsible for resolving conflicts in the medical record, including conflicts

among medical source opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between three types of medical source opinions: treating sources, examining sources, and reviewing sources, which are non-treating, non-examining sources that only review a claimant's file. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); 20 C.F.R. § 404.1527(c). Generally, a treating source opinion carries more weight than an examining source opinion and an examining source opinion carries more weight than a reviewing source opinion. *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c). An ALJ may reject an uncontradicted medical opinion of a treating source only for "clear and convincing" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). If a treating source's medical opinion is contradicted, however, an ALJ may reject the treating source's medical opinion for "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

Similarly, although an ALJ is not bound by a treating source's disability opinions, the ALJ cannot reject an uncontradicted treating source opinion on disability without presenting clear and convincing reasons for doing so. *Reddick*, 157 F.3d at 725. A contradicted treating source's opinion on disability can only be rejected with specific and legitimate reasons supported by substantial evidence in the record. *Id.* "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Id.*

An example of a clear and convincing reason for rejecting a medical source's opinion is reliance on a claimant's discredited subjective complaints. *Costa v. Comm'r of Soc. Sec.*, 2013 WL 2421700, at *1 (9th Cir. 2013) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)). An ALJ may also reject a medical source opinion that has internal inconsistencies

within the source's opinion statement or report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gabor v. Barnhart*, 221 Fed. App'x 548, 550 (9th Cir. 2007). Additionally, an ALJ is not required to accept a medical source opinion that is brief, conclusory, or inadequately supported by clinical findings. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected check-off reports that did not contain any explanation of bases for conclusions).

Here, despite finding that Plaintiff has some medically determinable impairments, the ALJ concluded that these impairments, individually or combined, are not severe. AR 24-25. The ALJ arrived at this conclusion after considering Plaintiff's testimony regarding her symptoms, as well as the medical opinion evidence. AR 25. After determining that Plaintiff's statements and allegations "have little to no credibility," the ALJ discussed the medical opinion evidence. AR 26, 29-31. Specifically, the ALJ addressed the opinions of six doctors, all of whom found that Plaintiff had at least one severe impairment.[1] AR 29-32. Despite all six doctors finding that Plaintiff had a severe impairment or combination of impairments, the ALJ rejected these opinions and concluded that Plaintiff did not have a severe impairment or combination of impairments. AR 29-33.

### 1. Dr. Rania Shammas

Dr. Rania Shammas, M.D., provided the ALJ with two statements on Plaintiff's behalf. AR 451-52, 458-64. First, on April 25, 2011, Dr. Shammas provided a letter "opin[ing] that [Plaintiff's] impairments 'make it very difficult for her to carry out normal daily functions.'" AR 30 (citing AR 452). Second, in June 2011, Dr. Shammas submitted a chronic fatigue

---

[1] Because all six doctors found at least one impairment to be severe and each doctor's findings are not inconsistent with the others, the Court treats their opinions as uncontradicted medical opinions. Thus, the ALJ must provide "clear and convincing" reasons for rejecting each medical opinion. The Court notes, however, that it would reach the same decision regarding the ALJ's reasons if the standard were "specific and legitimate" because none of the ALJ's reasons are "specific and legitimate" but not "clear and convincing."

syndrome questionnaire "indicating that [Plaintiff] is limited to less than sedentary work." *Id.*
(citing AR 458-64). The ALJ "g[a]ve these statements zero weight." *Id.* The ALJ came to this
conclusion for three reasons: Plaintiff's clinical findings are mild and not supportive of severe
functional limitations; Dr. Shammas's statements rely heavily on Plaintiff's subjective reports,
which are not reliable; and Plaintiff's "demonstrated attitudinal problems . . . cloud the issue of
how freely given this assessment might be." *Id.*

On April 25, 2011, Dr. Shammas met with Plaintiff for the first time. *See* AR 459. On
that date, Dr. Shammas wrote a general letter addressed "To whom it may concern," stating that
Plaintiff "has active depression, hypothyroidism and fibromyalgia that make it very difficult for
her to carry out normal daily functions . . . ." AR 452. Dr. Shammas appears to have arrived at
that conclusion after completing a rheumatologic evaluation of Plaintiff that same day. AR 456.
Although there are no chart notes or records from Dr. Shammas relating to Plaintiff's April 25,
2011 visit, Dr. Shammas wrote a letter to her colleagues that same day describing Plaintiff's visit
and explaining the results of Dr. Shammas's evaluation of Plaintiff. *Id.* As described in
Dr. Shammas's letter, Plaintiff's statements to Dr. Shammas appear to be the basis for most of
Dr. Shammas's conclusions. AR 456-57 (discussing Plaintiff's reports of pain and other
symptoms, such as difficulty sleeping). Plaintiff's physical exam showed that her "[h]eart and
lung exams were unremarkable[,] [s]he had severe diffuse myofascial pain, no tender joints, no
synovitis[,] [and] [s]he had intact strength." AR 457. Dr. Shammas also discussed some lab
results from November 2010, all of which were normal or negative. *Id.* Based on the examination
of Plaintiff, her history, and her lab results, Dr. Shammas determined that Plaintiff's myofascial
pain was "consistent with fibromyalgia." *Id.* Dr. Shammas also took x-rays of Plaintiff's "C-
spine, lumbar spine, hips and knees, to rule out underlying arthritis." *Id.*

PAGE 9 – OPINION AND ORDER

On April 27, 2011, the lab results regarding Plaintiff's lumbar spine, hips and pelvis, and knees all yielded mild, minimal, or normal findings and impressions. AR 500, 502, 503. Plaintiff's next visit with Dr. Shammas was on June 1, 2011. AR 455. At that visit, Plaintiff and Dr. Shammas discussed Plaintiff's improvement from medication and the possibility of reducing the dose of that medication. *Id.*

Dr. Shammas subsequently completed a "Chronic Fatigue Syndrome Questionnaire" on June 29, 2011. AR 459-64. In this questionnaire, Dr. Shammas indicated that Plaintiff was diagnosed with fibromyalgia due to chronic sleep disorder, depression, anxiety, and hypothyroidism. AR 459. Dr. Shammas then determined that Plaintiff could sit for two hours in an eight-hour day, stand or walk for two hours in an eight-hour day, occasionally lift or carry zero to twenty pounds, and never lift or carry items greater than twenty pounds. AR 462. Additionally, Dr. Shammas found that Plaintiff has difficulty with information processing due to decreased memory and is "incapable of even low stress." AR 462-63.

In considering the ALJ's explanation for rejecting Dr. Shammas's letter and questionnaire, the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence in the record for discounting Dr. Shammas's opinion. First, the ALJ rejected Dr. Shammas's letter and questionnaire because they were inconsistent with Plaintiff's clinical findings, which were mild and not supportive of severe limitations. AR 30. Regarding the letter, Dr. Shammas wrote it after her first meeting with Plaintiff and before obtaining any laboratory tests or imaging results, yet Dr. Shammas concluded that Plaintiff's impairments "make it very difficult for her to carry out normal daily functions." AR 452. Dr. Shammas did not provide any clinical findings to support that conclusion. *Id.* Regarding the questionnaire, the record indicates that Dr. Shammas found that Plaintiff had such severe limitations despite the clinical findings

being either normal or mild and minimal. AR 462-63 (discussing Plaintiff's limitations);

AR 500, 502, 503 (clinical findings). Because Dr. Shammas wrote the letter without referencing

any clinical findings and because she completed the questionnaire even though the clinical

findings were normal, mild, or minimal, the Court finds that this reason proffered by the ALJ to

reject Dr. Shammas's letter and questionnaire is clear and convincing and supported by

substantial evidence in the record. *See Bayliss*, 427 F.3d at 1216 ("The ALJ need not accept the

opinion of any physician . . . inadequately supported by clinical findings.") (quoting

*Thomas*, 278 F.3d at 957).

Second, the ALJ rejected the letter and questionnaire because Dr. Shammas's statements

rely heavily on Plaintiff's subjective complaints, which the ALJ found to be not credible. AR 26,

30. The ALJ's credibility finding with respect to Plaintiff has not been challenged. Both the letter

and the questionnaire rely heavily on Plaintiff's subjective complaints. *See* AR 452 (letter), 459-

64 (questionnaire). A plaintiff's credibility is crucial to diagnoses of fibromyalgia, depression,

and anxiety, because such diagnoses are based on subjective complaints. *See Benecke v.

Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("[Fibromyalgia] is diagnosed entirely on the basis

of patients' reports of pain and other symptoms."). Therefore, the Court finds that the ALJ's

rejection of Dr. Shammas's letter and questionnaire because they rely heavily on Plaintiff's

symptom complaints is a second clear and convincing reason supported by substantial evidence

in the record.[2] *See Tommasetti*, 533 F.3d at 1040. Because the ALJ offered clear and convincing

---

[2] The ALJ also stated that "the demonstrated attitudinal problems of the claimant cloud the issue of how freely given this assessment might be." AR 30. The Court finds that this reason is neither clear and convincing nor supported by substantial evidence because nothing in the record suggests that Plaintiff negatively influenced Dr. Shammas's assessments. Because the ALJ provided two other clear and convincing reasons, however, the Court finds that the ALJ properly rejected Dr. Shammas's letter and questionnaire. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

reasons supported by substantial evidence in the record, the Court upholds the ALJ's conclusion regarding Dr. Shammas's letter and questionnaire.

### 2. Dr. Elizabeth Whelchel

Dr. Elizabeth Whelchel, Ph.D., completed a Comprehensive Psychiatric Evaluation of Plaintiff on September 12, 2011, at the request of DDS. AR 465-470. Dr. Whelchel diagnosed Plaintiff with post-traumatic stress disorder, bipolar affective disorder, moderate depression, and personality disorder. AR 469. Dr. Welchel also diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") score of 70, which indicates mild symptoms or some difficulty in social or occupational functioning. *Id.* Based on this diagnosis and examination, Dr. Whelchel determined that Plaintiff had some limitations, notably that Plaintiff's "[a]bility to relate and interact with co-workers and the public is moderately impaired" and that Plaintiff's "[ability] to perform work activities without special or additional supervision is moderately impaired." AR 469-70.

The ALJ stated that he gave Dr. Whelchel's opinion "significant weight." AR 30. Although the ALJ claimed that he gave Dr. Whelchel's opinion "significant weight," the ALJ actually gave Dr. Whelchel's GAF score diagnosis significant weight but rejected Dr. Whelchel's other diagnoses and findings. AR 30-31. The ALJ credited the GAF score, claiming it was "consistent with [Dr. Whelchel's] clinical findings." AR 30. The ALJ then determined, however, that "Dr. Whelchel's clinical finding that [Plaintiff] has moderate difficulties getting along with co-workers and the public is not adopted, as this is inconsistent with the GAF score of 70 or Dr. Whelchel's observation that [Plaintiff] established rapport and was cooperative." AR 30. Additionally, the ALJ acknowledged Dr. Whelchel's diagnoses of post-traumatic stress disorder, bipolar affective disorder, moderate depression, and personality disorder, but determined that these impairments could not be severe because a GAF score of 70 would be inconsistent with a finding of severe impairment. AR 31. Thus, the ALJ gave

significant weight to Dr. Whelchel's GAF score diagnosis but rejected the other diagnoses and clinical findings in Dr. Whelchel's evaluation because those diagnoses and findings were inconsistent with the GAF score.

An ALJ may discredit a source opinion if that source's opinion statement or report has internal inconsistencies. *Melton v. Comm'r of Soc. Sec. Admin.*, 442 Fed. App'x 339, 341 (9th Cir. 2011); *Gabor*, 221 Fed. App'x at 550. For example, in *Melton*, the Ninth Circuit upheld the ALJ's decision to rely upon an internal inconsistency for discrediting a doctor. *Melton*, 442 Fed. App'x at 341. Specifically, the ALJ discredited the doctor based on an evaluation form in which the doctor diagnosed the claimant with a GAF score of 55, which indicates "moderate" difficulties in social, occupational, or school functioning, but found "marked" limitations, which is more severe than moderate. *Id.* Based on the inconsistency, the ALJ discredited the doctor's opinion. *Id.*; *see also Gabor*, 221 Fed. App'x at 550 (rejecting a doctor's entire medical opinion based on internal inconsistencies in a report).

Unlike *Melton*, however, here the ALJ found that Dr. Whelchel's opinion is internally inconsistent but still credited part of the inconsistency. The ALJ then relied on the credited part, namely the GAF score, to discredit the other part of the inconsistency, namely the findings of moderate impairments and the diagnosis of multiple disorders. The Court finds that the ALJ erred by crediting the GAF score but rejecting Dr. Whelchel's diagnoses and findings based on an internal inconsistency with the GAF score.

The Court notes that, even if the ALJ did not err by rejecting one part of an internal inconsistency and crediting the other part of the inconsistency, the ALJ erred by specifically accepting the GAF score rather than Dr. Whelchel's diagnoses and findings. The Ninth Circuit has stated that a "GAF scale 'does not have a direct correlation to the severity requirements in

the [Commissioner's] mental disorder listings.'" *Doney v. Astrue*, 485 Fed. App'x 163, 165 (9th Cir. 2012) (quoting *McFarland v. Astrue*, 288 Fed. App'x 357, 359 (9th Cir. 2008); *see Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *10 (D. Or. Aug. 18, 2014). Moreover, although the GAF scale was part of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") at the time of Dr. Whelchel's examination, the DSM has subsequently "dropped the GAF scale for 'several reasons,' including 'its lack of conceptual clarity' and 'questionable psychometrics in routine practice . . . .'" *Skelton*, 2014 WL 4162536, at *10 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). "These facts cast doubt on the evidentiary value of GAF scores." *Schopp v. Colvin*, 2014 WL 4722524, at *4 (D. Or. Sept. 22, 2014). Because GAF scores have suspect evidentiary value, if it were proper for the ALJ to reject one part of Dr. Whelchel's internal inconsistency and credit another part, the ALJ should have rejected the GAF score, which "does not have a direct correlation to severity," and credited the diagnoses and findings of "moderate" limitations, which Dr. Whelchel determined based on her examination of Plaintiff. *See Doney*, 485 Fed. App'x at 165.

### 3. Drs. K. Rudito and B. Morgan

Drs. K. Rudito, M.D., and Beverley Morgan, M.D., are state agency reviewing doctors. They reviewed Plaintiff's physical impairments and completed Disability Determination Explanations for DDS. AR 64-102. Dr. Rudito completed an initial assessment on October 13, 2011, and Dr. Morgan completed a reconsideration assessment on June 7, 2012. AR 80, 97. Regarding physical impairments, both doctors opined that Plaintiff's disorders of muscle, ligament, and fascia were severe. AR 72, 92.

In determining Plaintiff's physical RFC, Dr. Rudito concluded that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for a total of two hours, and sit for a total of six hours in an eight-hour workday. AR 74-75. Dr. Rudito

PAGE 14 – OPINION AND ORDER

noted that the two hour standing and walking limitation was restricted "[f]or the benefit of the doubt." AR 75. Dr. Rudito determined that these physical limitations restricted Plaintiff to sedentary work. AR 79. Dr. Rudito explained the limitations, largely relying on Dr. Shammas's notes and diagnoses, and focused on Plaintiff's fibromyalgia, hypothyroidism, and chronic fatigue syndrome. AR 75. Dr. Rudito ultimately concluded that Plaintiff was not disabled because Plaintiff "has the ability to adjust to other work" that exists in significant numbers in the national economy. AR 79-80. Dr. Morgan agreed with Dr. Rudito, except Dr. Morgan found that Plaintiff could stand and walk for a total of six hours in an eight-hour workday. AR 94-95. Dr. Morgan then affirmed Dr. Rudito's original determination. AR 96.

The ALJ gave "little weight" to these opinions. AR 29. The ALJ did so because "the evidence of record does not show that any of the claimant's physical impairments cause more than minimal functional limitations." *Id.*

The Court finds that the ALJ provided a clear and convincing reason supported by substantial evidence in the record for rejecting the opinions of Drs. Rudito and Morgan. As discussed above, the ALJ did not err in rejecting Dr. Shammas's opinions. Because Drs. Rudito and Morgan relied upon Dr. Shammas's notes regarding Plaintiff's symptoms of fibromyalgia, hypothyroidism, and chronic fatigue syndrome, the Court finds that the ALJ did not err in rejecting the opinions of Drs. Rudito and Morgan.

### 4. Drs. VanderPlate and Hawkins

Drs. Cal VanderPlate, Ph.D., and Pamela Hawkins, Ph.D., are state agency reviewing doctors. They reviewed Plaintiff's mental impairments and completed Disability Determination Explanations for DDS. AR 64-102. Dr. VanderPlate completed an initial assessment on October 18, 2011, and Dr. Hawkins completed a reconsideration assessment on June 29, 2012.

AR 78, 101. Regarding mental impairments, both doctors opined that Plaintiff's affective, anxiety, and personality disorders were severe. AR 72, 92.

In determining Plaintiff's mental RFC, Dr. VanderPlate concluded that Plaintiff had "sustained concentration and persistence limitations." AR 76. Specifically, Dr. VanderPlate determined that Plaintiff was moderately limited in her "ability to maintain attention and concentration for extended periods [and] . . . ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 76-77. Dr. VanderPlate also concluded that Plaintiff had "social interaction limitations," specifically in her "ability to interact appropriately with the general public [and] . . . ability to accept instructions to respond appropriately to criticism from supervisors." AR 77. Finally, Dr. VanderPlate concluded that Plaintiff had an adaptation limitation because her "ability to respond appropriately to changes in the work setting" was moderately limited. *Id.*

Dr. VanderPlate further explained Plaintiff's RFC as follows:

> Sustained Concentration and Persistence:
>
> Claimant can carry out detailed and complex tasks. Pace and concentration are adequate and claimant can usefully perform tasks, attend and concentrate for . . . two hours, and complete a normal work week.
>
> Social Interactions:
>
> Claimant can adequately deal with the public, accept supervision, and work in proximity with coworkers.
>
> Adaption:
>
> Claimant has no problems with stress tolerance and adaptive skills, and is able to adequately adjust to a task setting and deal with change.

AR 78. Dr. VanderPlate noted that Plaintiff could not perform her past relevant work as a bookkeeper, customer service representative, receptionist, or broker due to her moderate mental limitations, but Dr. VanderPlate ultimately agreed with Dr. Rudito that Plaintiff was not disabled because Plaintiff "has the ability to adjust to other work" that exists in significant numbers in the national economy. AR 78-80. Dr. Hawkins agreed with Dr. VanderPlate's RFC and explanation, affirming Dr. VanderPlate's determination. AR 98-99.

The ALJ gave the opinions of Drs. VanderPlate and Hawkins "little weight." AR 30. The ALJ explained that although Drs. VanderPlate and Hawkins found that Plaintiff's mental health impairments are severe and cause some moderate limitations, they "opined that [Plaintiff] can perform detailed and complex tasks adequately and can sustain social interactions." *Id.* The ALJ also stated that the RFC assessed by Drs. VanderPlate and Hawkins "includes no significant limitations, and is not consistent [with] the presence of a severe mental impairment." *Id.*

The Court finds that the ALJ's reasons for giving the opinions of Drs. VanderPlate and Hawkins little weight are neither clear and convincing nor supported by substantial evidence in the record. The ALJ states that Drs. VanderPlate and Hawkins "opined that [Plaintiff] can perform detailed and complex tasks adequately and can sustain social interaction." AR 30. The ALJ fails to note, however, that Drs. VanderPlate and Hawkins further explained that Plaintiff can perform complex tasks but can only "perform tasks, attend and concentrate for . . . two hours." AR 78, 99. Additionally, although Drs. VanderPlate and Hawkins indicated that Plaintiff can "adequately deal with the public, accept supervision, work in proximity with coworkers," they did so to clarify Plaintiff's capabilities because they determined that Plaintiff was moderately limited in interacting appropriately with the public and accepting instructions and responding appropriately to criticism from supervisors. AR 77-78, 98-99. For example, although

Plaintiff is limited in her ability to respond appropriately to criticism from supervisors, she could still accept some supervision. *Id.*

Finally, contrary to the ALJ's conclusion that the RFC includes "no significant limitations, and is not consistent [with] the presence of a severe mental impairment[,]" Drs. VanderPlate and Hawkins determined that Plaintiff was "moderately limited" in five areas. AR 30, 76-77, 97-99. Moderate limitations are frequently consistent with the presence of a severe mental impairment. *See* 20 C.F.R. § 404.1520a(c)(4), (d)(1) (discussing the five-point scale for functional limitations as none, mild, moderate, marked, and extreme and noting that "[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities"); *see also Allen v. Comm'r of Soc. Sec.*, 498 Fed. App'x 696, 697 (9th Cir. 2012) ("A moderate limitation in [functional areas] tends to show the presence of a severe mental impairment."); *see, e.g., Ropp v. Comm'r Soc. Sec. Admin.*, 2014 WL 2567175, at *4-5 (D. Or. 2014) (discussing whether the ALJ adequately captured the plaintiff's limitations in the RFC after determining that the plaintiff's moderate mental limitations were severe at step two). Moreover, based on these moderate limitations, Drs. VanderPlate and Hawkins determined that Plaintiff could not perform her past relevant work, indicating that these limitations are significant and consistent with the presence of a severe mental impairment. Thus, the Court finds that the ALJ's reasons for rejecting the opinions of Drs. VanderPlate and Hawkins are not clear and convincing and are not supported by substantial evidence in the record.

### 5.  Conclusion

The Court finds that the ALJ erred by rejecting the medical opinion evidence of Drs. Whelchel, VanderPlate, and Hawkins at step two because the ALJ's reasons are neither

clear and convincing nor supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202.

## B.  Sequential Analysis in the ALJ's Alternative Findings

Plaintiff next argues that the ALJ failed to follow the sequential evaluation process when making his alternative findings. After finding that Plaintiff did not have a severe impairment at step two, the ALJ made an alternative finding regarding Plaintiff's RFC and ability to perform past relevant work. Specifically, regarding Plaintiff's physical limitations, the ALJ determined that Plaintiff had the RFC "to perform a full range of light work." AR 33. The ALJ did not find that Plaintiff had any mental limitations. *Id.* The ALJ then concluded that Plaintiff could "perform past relevant work as a bookkeeper, customer service representative, receptionist, and broker." *Id.* The ALJ noted that these jobs are either skilled or semi-skilled. *Id.*

In light of the Court's decision regarding the opinions of Drs. Whelchel, VanderPlate, and Hawkins, the Court finds that the ALJ's RFC inadequately reflects Plaintiff's mental limitations. For example, Dr. Whelchel determined that Plaintiff's "[a]bility to relate and interact with co-workers and the public is moderately impaired" and that Plaintiff's "[ability] to perform work activities without special or additional supervision is moderately impaired." AR 469-70. Additionally, Drs. VanderPlate and Hawkins determined that Plaintiff was "moderately limited" in at least five areas. AR 76-77, 97-99. The ALJ's RFC for Plaintiff did not reflect any of these limitations. AR 33. Because the ALJ's reasons for discrediting Drs. Whelchel, VanderPlate, and Hawkins are not clear and convincing, the ALJ must consider their opinions, including their suggested limitations, and determine Plaintiff's RFC accordingly.

## C.  Remand for Benefits or for Further Proceedings and Credit-As-True Doctrine

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210.

Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014).

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled").

Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 775 F.3d at 1141 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings") (citing *Garrison*, 759 F.3d at 1021).

As explained above, the ALJ failed to provide legally sufficient reasons for discrediting the opinions of Drs. Whelchel, VanderPlate, and Hawkins in analyzing whether Plaintiff has a severe impairment. Upon remand, the ALJ must consider these opinions, determine Plaintiff's severe impairments, and proceed with the sequential analysis beyond step two. Outstanding issues remain, however, regarding the extent of Plaintiff's limitations caused by her severe and non-severe impairments, Plaintiff's appropriate RFC, and whether Plaintiff can perform past relevant work or other work that exists in sufficient numbers in the national economy. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for further proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 4th day of December, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge